SUCCESSION OF LEONE ITTMANN FLAKE

NO. 23-CA-310

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 805-656, DIVISION "I"
HONORABLE NANCY A. MILLER, JUDGE PRESIDING

April 03, 2024

**SCOTT U. SCHLEGEL**
**JUDGE**

Panel composed of Judges Stephen J. Windhorst,
Scott U. Schlegel, and Timothy S. Marcel

**REVERSED IN PART AND REMANDED;**
**MODIFIED IN PART; AFFIRMED IN PART**
    **SUS**
    **SJW**
    **TSM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

PLAINTIFF/APPELLANT,
ALLAN MARK FLAKE, SR. IN HIS CAPACITY AS THE TESTAMENTARY
EXECUTOR
 In Proper Person

COUNSEL FOR PLAINTIFF/APPELLEE,
DIANA FLAKE BAKER
 Justin E. Molaison
 Harold E. Molaison

COUNSEL FOR PLAINTIFF/APPELLEE,
WENDY FLAKE DEBRAM
 Jack A. Tittle, Jr.

**SCHLEGEL, J.**

The executor in this succession, A. Mark Flake, who is also a legatee, seeks review of the trial court's March 1, 2023 judgment of possession. He also appeals the trial court's March 10, 2023 judgment, which denied his motion for sanctions against legatee, Diana Flake Baker, and ordered him to pay $2,500 in attorney's fees to Ms. Baker and her counsel, Justin E. Molaison. For reasons stated more fully below, we reverse and modify the disposition of the decedent's Gator Trax mud boat in the March 1, 2023 judgment of possession. We also reverse the disposition placing the legatees into possession of certain banking and investment accounts that were previously liquidated and remand for further proceedings as instructed. Otherwise, we affirm the judgment of possession. With respect to the March 10, 2023 judgment, we affirm the denial of Mr. Flake's motion for sanctions against Ms. Baker under La. C.C.P. art. 863, but we reverse the award of attorney's fees against Mr. Flake.

## FACTS AND PROCEDURAL HISTORY

Though this succession does not involve a large or complex estate, it has an extensive and convoluted procedural history. Leone Ittmann Flake passed away on March 16, 2020 in Metairie, Louisiana. On April 1, 2020, Diana Flake Baker, one of the decedent's children and heirs, filed a petition requesting notice if anyone filed an application to appoint a succession representative for the decedent's estate. Shortly thereafter, the decedent's son and heir, A. Mark Flake, filed a petition seeking to be appointed as an independent administrator and to probate Ms. Flake's notarial will executed on September 7, 2019. The September 2019 will left the decedent's property to her three adult children, Mr. Flake, Ms. Baker, and Wendy Flake DeBram, and named Mr. Flake as the executor. Mr. Flake also submitted a preliminary descriptive list of the estate's assets and liabilities, which included

three homes that the decedent owned at the time of her death: One-half interest in 3701 Wanda Lynn Drive;[1] 3713 Wanda Lynn Drive; and 433 Greenmount Drive.

On May 8, 2020, the trial court denied Mr. Flake's request to be appointed as an independent administrator.[2]  Instead, the trial court signed an alternative order, provided by Mr. Flake, appointing him as an ordinary succession administrator.  The trial court also ordered Mr. Flake to file a detailed descriptive list of the succession property and to post a security bond in the amount of $46,000.

Ms. Baker then moved to file a prior will executed by the decedent in March 2019 into the record, which named her as independent executor.  The primary difference between the March and September 2019 wills is the manner in which the decedent divided ownership of her three homes.  The March 2019 will divided the three homes equally between the three children as co-owners.  By contrast, the September 2019 will granted Mr. Flake full ownership of 3713 Wanda Lynn Drive and Ms. DeBram full ownership of 433 Greenmount Drive.  The disposition of 3701 Wanda Lynn Drive to Ms. Baker is the main source of controversy in these proceedings and contains the following language, which Mr. Flake characterizes as an equalization formula:

> iii.)  The percentage of ownership of 3701 Wanda Lynn Drive valued in the amount of the combined appraised values of 433 Greenmount Drive and 3713 Wanda Lynn Drive shall be given to Diana Flake Baker, or if she predeceases me, to her heirs.  Diana Flake Baker, or her heirs, shall also be given one third of the remaining value exceeding those appraised amounts.  Wendy Flake DeBram, or her heirs, shall be given the percentage of ownership representing one third of the value exceeding the appraised value of 433 Greenmount Drive.  Alan Mark Flake, Sr., or his heirs, shall be given the percentage of ownership representing one third of the value exceeding the appraised value of 3713 Wanda Lynn Drive.

---

[1] According to the parties, the decedent owned community property with her husband, who died prior to her, but his succession proceedings remained unresolved.

[2] In written reasons issued by the trial court, it explained that language in the September 2019 will, indicating that the administration of the estate should be "as free as possible from any court supervision," was not sufficient to change Mr. Flake's designation in the will as an executor to an independent executor or administrator.

Ms. Baker also filed a petition to revoke Mr. Flake's letters of administration due to his alleged failure to provide her with notice of his application for appointment as an independent administrator. On May 27, 2020, the trial court entered an order revoking its May 8, 2020 order appointing Mr. Flake as an administrator and set the matter for hearing on July 30, 2020.

Following the hearing, the trial court signed an order that probated the September 2019 will, and appointed Mr. Flake as the testamentary executor in accordance with the terms of the will. The trial court also ordered Mr. Flake to provide an accounting within 30 days of the signing of the order. On September 4, 2020, Mr. Flake filed an Initial Interim Account. Approximately two months later, on November 12, 2020, Mr. Flake filed a Supplemental and Amended Descriptive List of Assets, outlining all of the decedent's immovable and movable assets, with appraised and estimated values for certain assets. This list indicated that the appraised values for the decedent's three residences as of the date of her death were as follows: 1) one-half (1/2) interest in 3701 Wanda Lynn Drive - $185,000; 2) 3713 Wanda Lynn Drive - $190,000; and 3) 433 Greenmount Drive - $265,000.

A week later, Mr. Flake and Ms. DeBram filed a petition for partial partition seeking to place the legatees into possession of the estate's immovable property only. They specifically asked the court to place Ms. DeBram into possession of full ownership of 433 Greenmount Drive, Mr. Flake into possession of full ownership of 3713 Wanda Lynn Drive, and for Ms. Baker to receive possession of the decedent's one-half interest in 3701 Wanda Lynn Drive. The petition did not ask the trial court to apply any equalization formulas to 3701 Wanda Lynn Drive, or any other home.

Shortly thereafter, Ms. Baker filed a petition to annul the September 2019 will, as well as an opposition to the petition for partial possession. In these filings, Ms. Baker alleged that the will was the product of undue influence on the decedent

by Mr. Flake and further challenged the testamentary capacity of the decedent at the time she executed the will. After the parties completed discovery related to the petition for nullity, the matter was set for trial on February 26, 2021. Following the presentation of Ms. Baker's case, Mr. Flake moved for a directed verdict, which the trial court granted.

On April 1, 2021, the trial court signed a written judgment dismissing Ms. Baker's petition to annul the will with prejudice, and also issued reasons for judgment. In its reasons, the trial court concluded that "[t]here was no evidence of lack of testamentary capacity, and no direct evidence of undue influence" that rose to the level of the required clear and convincing evidence standard. However, the trial court observed that the language in the September 2019 will pertaining to the disposition of the 3701 Wanda Lynn Drive to Ms. Baker was "poorly drafted and awkwardly worded," and reflected an incorrect presumption that this property was worth more than the other two residences.

After the trial court denied the petition to annul, Mr. Flake filed a motion to reset a hearing on the petition for partial possession of the immovable property that he had previously filed. Ms. Baker responded by filing a petition for possession of her own on April 5, 2021, requesting that the court place the legatees into possession of all of the estate assets, immovable and movable, identified in the detailed descriptive list and Initial Interim Account filed by Mr. Flake at the infancy of the proceedings. Similar to Mr. Flake's petition for possession, Ms. Baker did not ask the trial court to employ any equalization formulas to divide ownership of the residences. Both petitions for possession were set for hearing on June 3, 2021.

Mr. Flake argued in opposition that Ms. Baker's request to place the legatees into possession of all estate assets was premature and designed to circumvent her obligation to proportionally share in outstanding administrative expenses. He

argued that the vast majority of the expenses incurred by the estate related to maintaining the immovable property and for legal fees incurred to defend the petition to annul the decedent's testament filed by Ms. Baker. Therefore, he asked the court to delay entry of a judgment of possession with respect to the movables until the court determined how the administrative expenses should be divided among the legatees.

The following day, Mr. Flake filed a petition to file a second tableau of distribution seeking authorization to pay attorney's fees, taxes, and administrative costs. In response, Ms. Baker filed an opposition arguing that the court should hold Mr. Flake personally responsible for attorney's fees incurred to compel discovery relevant to her petition to annul the will. Due to this opposition, the trial court also set the petition seeking to homologate the second tableau of distribution for hearing.

At the June 3, 2021 hearing, Mr. Flake indicated that the parties were in agreement as to how to distribute the immovable property. Therefore, he asked that the court place the parties in partial possession of the immovable property so that the estate would no longer have to incur expenses such as taxes, insurance, and utilities for these properties. But he requested additional time before placing the legatees into possession of the movable property to allow him to file another tableau of distribution to address additional outstanding expenses, including attorney's fees, taxes, and the executor's fee. During oral argument, the trial court indicated that it was not willing to enter a partial judgment of possession. Therefore, the trial court ordered Mr. Flake to file a final tableau of distribution including all expenses by July 6, 2021, and ordered any opposition to the final tableau to be filed by July 21, 2021. The trial court reset all pending matters for hearing on August 12, 2021.

On July 6, 2021, Mr. Flake filed a petition to file the third and final tableau of distribution. Unfortunately, the tableau did not include a schedule of proposed distributions of the movable property or funds to the legatees. Moreover, while the title of the filing indicated it was a final tableau, it included the following footnote regarding the need to supplement the "final accounting" with additional expenses:

> Executor notes and discloses that as there are Petitions for Possession and a Second Tableau of Distribution that remain pending in this proceeding, there will be additional administrative expenses in the form of attorney's fees and court costs that will be incurred subsequent to the submission of this Third and Final Tableau of Distribution and may be additional maintenance costs incurred for 3701 Wanda Lynn Drive, which are subject to and may need to approval (sic) of the Court.

The following day, Mr. Flake filed a supplemental and amending petition for possession, in which he argued for the first time that because the appraised value of 433 Greenmount significantly exceeded the value of the other two residences, the trial court should divide ownership of this property among the three children to equalize the distribution. He, therefore, proposed that the trial court reduce Ms. DeBram's percentage of ownership of 433 Greenmount to 81.4%, and award Ms. Baker and himself ownership percentages of 8.4% and 10.2%, respectively. Mr. Flake claimed this adjustment was necessary because at the time the decedent executed the September 2019 will, she mistakenly believed the value of her interests in 3701 Wanda Lynn exceeded the values of 433 Greenmount and 3713 Wanda Lynn. Therefore, Mr. Flake explained that he included an equalizing formula in the will to adjust the ownership of 3701 Wanda Lynn. The property appraisals he obtained after the decedent's death revealed that the value of 433 Greenmount was actually substantially higher than the value of the other two residences. And so he requested that the trial court award Ms. Baker and himself a percentage of ownership of 433 Greenmount Drive in order to equalize the

distribution of the residences by value in accordance with the decedent's intentions and with La. C.C. art. 1613.[3]

Finally, on that same day, Mr. Flake filed a "Current Account," which provided an updated list of the estate's movable property. The account indicated that the decedent's checking accounts with Fidelity Bank and Gulf Coast Bank, as well as an annuity with Lincoln Benefit Life and an investment account with Avantax Investment Services, were either closed or liquidated, and the funds were all deposited into a Regions Bank checking account opened for administration of the decedent's estate.

Ms. DeBram responded to Mr. Flake's filings with an "Opposition to Supplemental and Amended Petition, a Motion to Traverse Supplemental and Amended Descriptive List of Assets, and Motion for Declaratory Judgment." In her motion, she asked the trial court to enter a declaratory judgment finding that the September 2019 will awarded her full ownership of 433 Greenmount Drive, regardless of the value. She alternatively argued that she obtained an appraisal of 433 Greenmount Drive that valued the property at $185,000, and thus the properties were essentially equal in value.

Ms. Baker filed an "Opposition to Petition Filing Third and Final Tableau of Distribution, Opposition to Supplemental and Amending Petition for Possession and Supplemental Opposition to Petition Filing Second Tableau of Distribution." In her opposition, Ms. Baker objected to the third and final tableau of distribution because it did not include a proposal to distribute any funds to the heirs and was not final because the executor indicated that he would have to supplement the tableau to add additional expenses. She complained that Mr. Flake should have

---

[3] La C.C. art. 1613 provides that "[i]f the identification of an object given is unclear or erroneous, the disposition is nonetheless effective if it can be ascertained what object the testator intended to give. If it cannot be ascertained whether a greater or lesser quantity was intended, it must be decided for the lesser."

included all final and anticipated expenses to allow the court to homologate the final tableau of distribution and enter the judgment of possession to close the succession. Ms. Baker also objected to Mr. Flake's request for an executor's fee and argued that he should be personally responsible for some or all of the attorney's fees incurred by the estate due to the breach of his fiduciary duty to close the succession.

Finally, Ms. Baker filed a Supplemental and Amending Petition for Possession asking that the trial court remove Mr. Flake as executor due to his request to place himself into possession of a percentage of ownership of 433 Greenmount, contrary to the provisions of the probated testament.

On August 13, 2021, the following matters came for hearing before the trial court: the Petition for Partial Possession filed by Mr. Flake and Ms. DeBram; the Supplemental and Amending Petition for Possession filed by Mr. Flake; the Petition for Possession filed by Ms. Baker; the objections to the Second and Third Tableaus of Distribution filed by Ms. Baker; and Opposition and Rule to Traverse Supplemental Detailed Descriptive List and Motion for Declaratory Judgment filed by Ms. DeBram.

At the hearing, Ms. Baker's counsel called Mr. Flake as a witness, but only for the limited purpose of having Mr. Flake confirm that the decedent asked him to revise her will in order to give Ms. DeBram full ownership of 433 Greenmount Drive. After hearing this limited testimony and arguments from counsel, the trial court ordered the second and third tableaus of distribution homologated and overruled all objections. The trial court further ordered that any attorney's fees and costs associated with the administration of the succession that Mr. Flake failed to include in the tableaus of distribution were to be paid personally by him.

The trial court then denied Mr. Flake's supplemental and amending petition for possession, and granted Ms. DeBram's motion for declaratory judgment,

thereby finding that Ms. DeBram should obtain full ownership of 433 Greenmount Drive without any equalizing adjustments. Finally, the trial court granted Ms. Baker's petition for possession and placed the heirs into "possession of the properties as listed in the supplemental and amending descriptive list filed on November 12, 2020."[4] But the trial court failed to render a separate written judgment of possession containing specific distributions of the immovable and movable property. The court further stated on the record that it was a "partial possession," as there were other small items outstanding.

On August 16, 2021, the trial court signed a written judgment setting forth its rulings. On October 12, 2021, Mr. Flake filed a motion for devolutive appeal, which the trial court granted. This Court, however, dismissed the appeal, without prejudice, for lack of appellate jurisdiction. *Succession of Flake*, 22-91 (La. App. 5 Cir. 11/30/22), 353 So.3d 1004, 1008-09. This Court determined that the August 16, 2021 judgment did not distribute all of the succession property, and therefore, was not a final judgment. *Id,*

Following remand, Ms. Baker filed a motion asking the trial court to enter a final judgment of possession and attached a proposed judgment. The trial court set the motion for hearing on March 2, 2023.

Mr. Flake filed an opposition objecting to the proposed judgment of possession on several grounds. He first argued that the proposed distribution of movables was incorrect because it was based on the list of movables contained in the initial interim account and supplemental and amended descriptive list he filed earlier in the succession proceedings. As a result, the proposed judgment of possession, if signed, would place the legatees in possession of financial accounts

---

[4] The trial court stated in its oral ruling at the hearing that it granted "Wendy's" petition for possession. However, Ms. DeBram did not file a separate petition for possession. Further, in its written judgment rendered on August 16, 2021, the trial court granted Ms. Baker's petition for possession. When there is a conflict between a trial court's oral rulings and written judgment, the written judgment controls. *See Richard v. Bourgeois*, 19-494 (La. App. 5 Cir. 3/18/20), 293 So.3d 790, 793.

that had been closed and consolidated into a single estate account. He argued that the trial court should instead use the Current Account he filed on July 7, 2021, to distribute the remaining estate funds as it contained the updated and final list of assets following the satisfaction of the estate's debts. Specifically, he proposed that the trial court distribute the remaining funds as follows:

> The *Current Account*, which was updated and filed prior to the final hearing should be used in order to determine the final corrected lists of assets and expenses of the estate. In this regard, following the satisfaction of the estate's debts, the remaining $1,373.26 should be ordered to be dispersed as follows: $457.75 to Mrs. DeBram, $457.75 to Mr. James Baker and $457.75 to Mr. Flake.[5]

Second, he complained that the proposed judgment of possession provided for joint possession of the decedent's vehicles, rather than dividing the vehicles among the legatees following appraisal as provided for in the September 2019 will. He argued that the decedent had three vehicles, which he estimated to be of equal value as set forth in the Current Account, and therefore, each legatee should receive a vehicle. Finally, he claimed that will left him all hunting equipment and that he should receive sole possession of the Gator Trax mud boat because it is hunting equipment.

Mr. Flake also filed a motion for sanctions against Ms. Baker under La. C.C.P. art. 863, arguing that Ms. Baker's frivolous filings, made throughout the proceedings, delayed the matter and caused the estate to incur attorney's fees, expenses, and costs that consumed the assets. The specific filings addressed in the motion for sanctions included: Ms. Baker's rule to revoke seeking to revoke Mr. Flake's appointment as administrator; the petition to annul the September 2019 will; the petition for possession filed after the trial court denied the petition to

---

[5] The September 2019 will states that with respect to the estate's "[b]ank accounts, stocks, cash" that "[a]fter all bills have been paid and bank accounts closed, I want remaining funds divided equally among my three children, . . . However, the first $20,000 of my daughter's, Diana Flake Baker's, share shall be given to her son, James Michael Baker."

annul; and the supplemental petition for possession asking the trial court to remove Mr. Flake as executor.

On February 24, 2023, Ms. Baker filed an opposition to the motion for sanctions arguing that her filings outlined above did not violate Article 863. She further urged the trial court to strike Mr. Flake's motion for sanctions as frivolous and award her costs incurred to defend his baseless motion.

On March 1, 2023, the trial court signed the judgment of possession proposed by Ms. Baker. At the March 2, 2023 hearing, the trial court denied Mr. Flake's request to introduce exhibits attached to various pleadings previously filed in the record and also denied his request to introduce an affidavit from the appraiser who valued the decedent's homes at the time of death. Following brief argument, the trial court indicated that it was not going to relitigate the issues decided in the August 16, 2021 judgment and thus, granted Ms. Baker's proposed judgment of possession. The trial court denied Mr. Flake's motion for sanctions, and instead awarded $2,500 in attorney's fees to Ms. Baker and her counsel, Justin Molaison, finding that Mr. Flake's motion for sanctions was frivolous.

The trial court signed a written judgment on March 10, 2023. Mr. Flake moved for a devolutive appeal on March 24, 2023, which the trial court granted.

**DISCUSSION**

On appeal, Mr. Flake contends that the trial court erred on several different grounds. He argues that the trial court erred by placing the heirs into possession of the decedent's homes without equalizing ownership pursuant to the value of the homes. He contends that Louisiana law permits the adjustment based on the decedent's mistake as to the value of the homes. He also argues that the trial court erred by excluding evidence of the property appraisals. With respect to the movable assets, he argues that the trial court erred with respect to the distribution of certain movables, including the estate's remaining funds following the

satisfaction of the estate's debts, the decedent's three vehicles, and the Gator Trax mud boat.

Mr. Flake next argues that the trial court erred by denying his motion for sanctions and failing to require Ms. Baker to repay the estate for expenses caused by her frivolous pleadings. Finally, he argues that the trial court's award of sanctions against him must be reversed because he did not receive notice and a hearing in accordance with the requirements of La. C.C.P. art. 863.

### *Immovable Property – Decedent's Three Residences*

We first address Mr. Flake's assignments of error relating to the immovable property – the decedent's three residences. The dispute on appeal is whether the September 2019 will provided for Ms. DeBram to receive full ownership of the 433 Greenmount Drive residence or whether Mr. Flake and Ms. Baker should receive a percentage of ownership of this property to equalize the distribution of the decedent's three homes by their appraised values.

The September 2019 will provides for the disposition of the three residences as follows:

a.) Immovable property

The houses and property located at 433 Greenmount Drive, 3701 Wanda Lynn Drive and 3713 Wanda Lynn Drive located in Metairie shall be appraised by a certified property appraiser and divided as follows:

i) Full ownership of 433 Greenmount shall be given to my daughter, Wendy Flake DeBram, or if she predeceases me, to her heirs.

ii) Full ownership of 3713 Wanda Lynn Drive shall be given to my son, Alan Mark Flake, Sr., or if he predeceases me, to his heirs.

iii) The percentage of ownership of 3701 Wanda Lynn Drive valued in the amount of the combined appraised values of 433 Greenmount Drive and 3713 Wanda Lynn Drive shall be given to Diana Flake Baker, or if she predeceases me, to her heirs. Diana Flake Baker, or her heirs, shall also be given one third of the remaining value exceeding the appraised amounts. Wendy Flake DeBram, or her heirs, shall be given the percentage of ownership representing one third of the value exceeding the appraised value of 433 Greenmount

Drive. Alan Mark Flake, Sr., or his heirs, shall be given the percentage of ownership representing one third of the value exceeding the appraised value of 3713 Wanda Lynn Drive.

The trial court explained in its October 14, 2021 reasons for judgment that it awarded full ownership of 433 Greenmount to Ms. DeBram based on the clear and unambiguous language of the September 2019 will as follows: "Nothing is unclear about this provision of the testament, and nothing in the language surrounding the provision implies that it should be interpreted differently. Therefore, the direct testamentary language controls."

Ms. DeBram and Ms. Baker argue on appeal that this Court should uphold the trial court's ruling on this issue. Mr. Flake argues that while the decedent intended to give Ms. DeBram full ownership of her home, she also intended for her residences to be divided among her children by equal value, as evidenced by the "equalization formula" contained in Section (a)(iii). As a result, he claims the trial court erred when it placed the legatees into possession of the three homes without equalizing the ownership percentages based on the properties' values. Mr. Flake argues that because the Greenmount property has the highest appraised value, the trial court should have adjusted the ownership percentages of that property, and then provide Ms. DeBram with a lifetime usufruct so she could remain in her home. He also argues that the trial court erred by denying his request to introduce an affidavit from his appraiser establishing the appraised values of the three homes.

The intent of the testator controls the interpretation of her testament. If the language of the testament is clear, its letter is not to be disregarded under the pretext of pursing its spirit. La. C.C. art. 1611(A). Therefore, when interpreting a testament, the reviewing court must determine the testator's intent without departing from the terms of the will. *Estate of Rick*, 23-391, p. 2 (La. App. 4 Cir. 2/5/24), 2024 WL 412253. The court's function is to construe the will as written, without adding words to any controversial parts under the guise of interpreting the

testator's intent. *Succession of Laborde*, 17-1334 (La. App. 1 Cir. 5/31/18), 251 So.3d 461, 464. It is well-established that in interpreting wills, the first and natural impression conveyed to the mind on reading the will as a whole is entitled to great weight. *Id.*

When a will is free of ambiguity, it must be carried out according to its written terms, without reference to extrinsic evidence of the testator's intent. *Succession of Williams*, 608 So.2d 973, 975 (La. 1992). In other words, while the court must endeavor to give all legacies of a testament effect, the court cannot ignore the testament as written. When a provision in a will is subject to more than one equally reasonable interpretation, then the court may consider all circumstances existing at the time of the execution of the will which may aid in determining the intent of the testator. *Succession of Arseneaux*, 22-638 (La. App. 1 Cir. 12/29/22), 360 So.3d 868, 873, *writ denied*, 23-135 (La. 4/4/23), 358 So.3d 873. However, courts use extrinsic evidence to resolve ambiguity and determine what the testator's written words actually mean, not to rewrite the will. *Succession of Burguieres*, 612 So.2d 864, 865 (La. App. 5 Cir. 1992), *writ denied*, 614 So.2d 1256 (La. 1993).

As demonstrated by the complex procedural history outlined above, throughout these proceedings the parties have shifted their positions as to how they believe the court should divide the decedent's three residences. The result is this convoluted and prolonged litigation. However, the issue of whether or not Ms. DeBram should receive full ownership of 433 Greenmount Drive is not complex because the plain and unambiguous language of the September 2019 will provides that Ms. DeBram "shall" receive full ownership of 433 Greenmount Drive without any condition depending on the value of the home.

Mr. Flake argues that this interpretation gives no effect to Section (a)(iii), which he characterizes as an equalization formula. He contends that he added this

provision to the will based on the decedent's wish to ensure the properties were divided equally by value. He further contends that the formula was included in the disposition for 3701 Wanda Lynn based on the mistaken belief of the decedent and all parties that this property had the greatest value because it had the largest square footage. The appraisals Mr. Flake obtained, however, revealed that 433 Greenmount Drive had the highest value. Therefore, he argues that the trial court should have adjusted the ownership of this property as follows: Ms. DeBram – 81.4%, Ms. Baker – 8.4%, and Mr. Flake 10.2%, with a lifetime usufruct for Ms. DeBram, in order to equally distribute the properties.

Mr. Flake further argues that La. C.C. art. 1613 supplies legal authority for this Court to rewrite the will in accordance with his proposal based on the decedent's alleged mistake regarding the value of 3701 Wanda Lynn Drive. However, Article 1611 explains that Article 1613 applies only if the decedent's intent cannot be ascertained from the language of the testament.[6] La. C.C. art. 1613 is not applicable here because it is apparent from the plain language of the will that Ms. DeBram is to receive full ownership of 433 Greenmount Drive, without any conditions or reductions in ownership depending on its appraised value. This Court cannot rewrite the will to divide ownership of this property among the legatees and then award Ms. DeBram a usufruct as requested by Mr. Flake.

Finally, we do not agree with Mr. Flake's characterization of the language in Section (a)(iii) as an equalization formula. Though the language is confusing and contradictory, the first sentence of the "equalization formula" appears to indicate that it is not triggered unless the *combined* value of the two other properties exceeded the value of 3701 Wanda Lynn Drive. Thus, this language does not

---

[6] La. C.C. art. 1611 provides in pertinent part that "[t]he following rules for interpretation apply only when the testator's intent cannot be ascertained from the language of the testament."

evidence an intent by the decedent to equally divide the three residences based on value.

Accordingly, we find that based on the plain and unambiguous language of the September 2019 will, the trial court did not err by awarding Ms. DeBram full ownership of 433 Greenmount Drive.

We further find that the trial court did not abuse its discretion by denying Mr. Flake's request to enter the affidavit regarding the appraised values of the property into evidence. Generally, an affidavit is inadmissible as hearsay. We also find that the appraised values of the residences are irrelevant for purposes of this appeal based on our finding that the September 2019 will awarded full ownership to Ms. DeBram regardless of its value. Accordingly, Mr. Flake's assignments of error relating to the division of the three residences are without merit.

## *Movable Property*

Mr. Flake also argues on appeal that the trial court failed to distribute certain movable property in accordance with the decedent's intent as stated in the September 2019 will.

### **Automobiles**

First, we address Mr. Flake's arguments contesting the distribution of the decedent's automobiles in the March 1, 2023 judgment of possession. The September 2019 will provides for the automobiles to be divided as follows:

> iv.) Automobiles
>
>> Any and all automobiles shall be appraised and divided equally by value among my three children. . . .

The judgment of possession placed the three heirs "into possession of an undivided one-third (1/3) interest in and all of the decedent's vehicles, including the 2008 GMC Denali SUV, 1952 Red MG TD and 1951 Cream MG TD." Mr. Flake argues that the trial court erred by placing the heirs into undivided

possession of the three vehicles because they can be divided equally by their estimated value as follows:

2008 GMC Denali SUV   Est. Value $17,000   Mr. Flake

1952 Red MG TD        Est. Value $18,000   Ms. DeBram

1951 Cream MG TD      Est. Value $18,000   Ms. Baker

On appeal, Ms. Baker argues that Mr. Flake's proposed distribution does not divide the vehicles equally by value because the decedent possessed full ownership of the 2008 GMC Denali SUV, but only half ownership in the other two vehicles as they were community property owned with her deceased husband.  Mr. Flake contends that no evidence exists in the record to support Ms. Baker's assertion that the decedent did not possess full ownership of the automobiles.

However, we find this representation by Mr. Flake to be inaccurate.  The supplemental and amended descriptive list of assets filed by Mr. Flake on November 12, 2020, indicated that the decedent owned only a one-half interest in all three vehicles.[7]  Mr. Flake did not amend this list, but instead argues that this Court should look to the Current Account he filed on July 7, 2021, which provides estimated values that appear to indicate the decedent possessed full ownership of all three vehicles.

Considering the language of the September 2019 will and the contradictions in the record regarding the decedent's ownership interests in the automobiles, we cannot find that the trial court erred by awarding the legatees each a one-third interest.

**Checking and Investment Accounts**

We next address whether the trial court erred by placing the legatees into possession of checking and investment accounts, which Mr. Flake contends were

_____

[7] La. C.C.P. art. 3137 provides that the detailed descriptive list of succession property "shall be accepted as prima facie proof of all matters shown therein, unless amended or traversed successfully."

closed and deposited into the estate's checking account at Regions Bank. The relevant portion of the March 1, 2023 judgment of possession states:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Diana Flake Baker, Alan Mark Flake, Sr. and Wendy Flake Debram be and are hereby placed into possession of an undivided one-third (1/3) interest each in Avantax Investment Services Account HVT - XXX893, Fidelity Bank Account in the names of Leone Ittmann Flake and James M. Baker, Gulf Coast Bank and Trust Account in the names of Leone Ittmann Flake and James M. Baker, and Lincoln Benefit Life Annuity Account# XXXXXX543.

The September will provides as follows with respect to "[b]ank accounts, stocks, cash":

> After all bills have been paid and bank accounts closed, I want the remaining funds divided equally among my three children . . . However, the first $20,000.00 of my daughter's, Diana Flake Baker's, share shall be given to her son, James Michael Baker.

Mr. Flake claims that after paying the estate's debts, the remaining funds total $1,373.26, and should be awarded as follows: $457.75 to Ms. DeBram; $457.75 to Mr. James Baker; and $457.75 to Mr. Flake.

We find that the trial court erred by placing the legatees into possession of the closed accounts, including the Avantax Investment Services Account HVT, Fidelity Bank Account, Gulf Coast Bank and Trust Account, and Lincoln Benefit Life Annuity Account. The accountings and the tableaus of distribution filed by Mr. Flake, as executor, and homologated by the trial court, indicate that all four of these accounts were closed and the funds were deposited into the succession account. It is no longer possible to place the legatees in possession of these accounts.

However, the accountings and third and final tableau of distribution do not contain any explanations as to how Mr. Flake calculated the amount of the remaining funds to be distributed to the legatees, or even request the distributions now proposed by Mr. Flake. Thus, we cannot modify the judgment of possession

to distribute the remaining funds as requested and must remand this issue to the trial court for further consideration.

Accordingly, we reverse the portion of the March 1, 2023 judgment of possession that placed the legatees into possession of the Avantax Investment Services Account HVT, Fidelity Bank Account, Gulf Coast Bank and Trust Account, and Lincoln Benefit Life Annuity Account, and remand for further proceedings.

### Gator Trax Mud Boat

Finally, Mr. Flake argues that the trial court erred by awarding each legatee a one-third interest in the decedent's Gator Trax mud boat because the will left all hunting equipment to him as follows:

ii.) Tools, guns, animal mounts and hunting equipment

> Any and all tools, guns, animal mounts and/or hunting equipment shall be given to my son, Alan Mark Flake, Sr. . . .

Ms. Baker and Ms. DeBram did not respond or take a position with respect to this argument in their appellee briefs. We agree that a mud boat is hunting equipment and therefore, the trial court erred by placing all of the heirs in possession of this property. Accordingly, we vacate the relevant paragraph of the trial court's March 1, 2023 judgment of possession and order that Mr. Flake be placed into sole possession of the Gator Trax mud boat.

### *Mr. Flake's Motion for Sanctions Against Ms. Baker*

Mr. Flake next argues that the trial court erred by denying his motion for sanctions under La. C.C.P. art. 863 against Ms. Baker. Mr. Flake contends that Ms. Baker and her counsel filed several pleadings, including the petition to annul the September 2019 will, with the intent to harass, cause delay, and to needlessly increase the costs of the succession proceedings. He argues that the trial court erred by failing to order Ms. Baker to repay the estate for the increased expenses caused by her frivolous pleadings.

The relevant portions of La. C.C.P. art. 863 provide as follows:

B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading, and that to the best of his knowledge, information, and belief formed after reasonable inquiry, he certifies all of the following:

(1) The pleading is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

(2) Each claim, defense, or other legal assertion in the pleading is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law.

(3) Each allegation or other factual assertion in the pleading has evidentiary support or, for a specifically identified allegation or factual assertion, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

* * *

D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable attorney fees.

Under La. C.C.P. art. 863, litigants and their attorneys have an affirmative duty to make an objectively reasonable inquiry into the facts and the law. The trial court should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading was submitted. *Marks v. Marks*, 21-741 (La. App. 5 Cir. 9/28/22), 349 So.3d 1071, 1076. In determining whether sanctions are appropriate under La. C.C.P. art. 863, a court considers these factors to evaluate whether a litigant and his counsel made the required reasonable factual inquiry before signing: (1) the time available to the signor for investigation; (2) the extent of the attorney's reliance on the client for factual support for the document; (3) the feasibility of a prefiling investigation; (4) whether the signing attorney accepted the case from another attorney; (5) the complexity of the factual and legal issues;

and (6) the extent to which development of the factual circumstances underlying the claim requires discovery. *Alombro v. Alfortish*, 02-1082 (La. App. 5 Cir. 4/29/03), 845 So.2d 1171, 1175, *writ denied*, 03-1946 (La. 10/31/03), 857 So.2d 485.

La. C.C.P. art. 863 is penal in nature and should be strictly construed. *Voitier v. Guidry*, 14-276 (La. App. 5 Cir. 12/16/14), 166 So.3d 262, 271, *writ denied*, 15-0118 (La. 4/10/15), 176 So.3d 1032. On review, a trial court's determination of whether to impose sanctions will not be reversed unless it is manifestly erroneous or clearly wrong. *Id.* at 269.

Mr. Flake moved for sanctions against Ms. Baker on February 1, 2023, after this Court remanded his appeal for lack of jurisdiction. In his motion, Mr. Flake lists four pleadings which he alleges are sanctionable: 1) Rule to Revoke Letters of Administration for Failure to Provide Notice Pursuant to La. C.C.P. art. 3091 filed May 26, 2020; 2) Petition to Annul Probated Testament filed December 14, 2020; 3) Petition for Possession filed April 5, 2021; and 4) Supplemental Petition for Possession filed on July 21, 2021.

### 1) Rule to Revoke

Mr. Flake argues that at the outset of the succession proceedings, Ms. Baker filed a motion to revoke his letters of administration under La. C.C.P. art. 3091 for failure to provide notice. He argues that this pleading is sanctionable because Article 3091 only applies to intestate successions, not testamentary executors or independent administrators named in a testament. He claims Ms. Baker filed the rule to revoke solely to harass him, delay proceedings, and increase litigation costs. He also complains that Ms. Baker slandered him by alleging he was of bad moral character and stole from the estate.

As explained above, though the September 2019 will appointed Mr. Flake as an executor, he initially filed a petition to be appointed as an independent

23-CA-310          21

administrator. When the trial court found that the will did not authorize an independent administration, Mr. Flake then submitted an alternative order to be appointed as an ordinary administrator. Ms. Baker then filed the rule to revoke the letters of administration issued to Mr. Flake arguing that Mr. Flake failed to provide her notice of his filing to be appointed as an administrator and further complained that Mr. Flake had not posted security. As a result, the trial court vacated its order appointing Mr. Flake as an administrator, and following a hearing, probated the testament and appointed Mr. Flake as executor in accordance with the terms of the will. Considering Mr. Flake's initial request to be appointed as an independent administrator and the alternative order he provided to the trial court appointing him as an ordinary administrator, as opposed to a testamentary executor, we do not find that the trial court was manifestly erroneous in denying his request for sanctions on these grounds.

**2) Petition to Annul September 2019 Will**

Mr. Flake claims that Ms. Baker initially threatened to file the petition to annul after they received the property appraisals and she demanded that the siblings divide the estate into equal portions. He claims that Ms. Baker did not have any evidence to support her undue influence claims and that she used the filing to increase the costs of litigation and impugn his character. He also argues that the trial court's dismissal of the petition to annul by directed verdict supports his request for sanctions.

In response, Ms. Baker argues that at the time she filed the petition to annul, she had not yet had the opportunity to conduct discovery and that she obtained audio recordings which indicated the decedent may not have understood the September 2019 will. She notes that Mr. Flake, a licensed attorney, drafted the September 2019 will, while the decedent's two prior wills were drafted by other attorneys. She argues that the prior wills provided for the heirs to share ownership

of the properties equally and that they did not name Mr. Flake as executor. Ms. Baker also argues that while the trial court found that she did not prove undue influence sufficient to invalidate the will, the trial court stated at trial and in its reasons for judgment that the September 2019 will was poorly worded and that it did not adequately represent the decedent's wishes. After considering the relevant factors applicable to a request for sanctions under Article 863, we do not find that the trial court was manifestly erroneous by denying Mr. Flake's request for sanctions against Ms. Baker for filing the petition to annul the September 2019 will.

### 3) Petition for Possession of Entire Estate

Mr. Flake also seeks sanctions for Ms. Baker's petition for possession filed shortly after the trial court denied her petition to annul. He contends that she filed this petition as retaliation for the denial of her petition to annul and that she knew the request to place the parties in possession of the entire estate was premature. In response, Ms. Baker argues that the emails she introduced at the hearing on the motion for sanctions show that she tried to join in Mr. Flake's petition for possession, but Mr. Flake refused. Therefore, she explains that she filed her own petition for possession and requested a show cause hearing. Based on the foregoing, we do not find the trial court was manifestly erroneous by denying sanctions for this filing.

### 4) Supplemental Petition for Possession

Finally, Mr. Flake complains that Ms. Baker should be sanctioned for filing her supplemental petition for possession, which requested his removal as executor. Ms. Baker contends that she requested Mr. Flake's removal based on his failure to follow the trial court's court order to file a final tableau of distribution and close the estate. As explained above, Mr. Flake did not follow the trial court's instructions following the June 3, 2021 hearing. Instead, he filed the third and final

tableau of distribution that did not include any proposed distributions to the legatees and which indicated that it would be updated with additional outstanding expenses. As a result, the trial court ordered that Mr. Flake would be personally liable for all outstanding expenses. Accordingly, we do not find that the trial court was manifestly erroneous by denying sanctions for Ms. Baker's filing that requested Mr. Flake's removal as executor.

## *Sanctions Awarded Against Mr. Flake for Filing Motion for Sanctions*

In this assignment of error, Mr. Flake argues that the trial court erred by awarding $2,500 in attorney's fees against him based on its finding that his motion for sanctions filed against Ms. Baker was frivolous. Mr. Flake argues that the trial court erred in granting the sanctions because it failed to follow the procedures required under La. C.C.P. art. 863(E).

Article 863(E) provides that a "sanction authorized in Paragraph D shall be imposed only after a hearing at which any party or his counsel may present any evidence or argument relevant to the issue of imposition of the sanction." This Court has previously held that La. C.C.P. art. 863(E) and due process require that a party be given reasonable notice of an Article 863 hearing at which sanctions are to be considered. *Division of Administration, Office of Community Development - Disaster Recovery Unit v. Joseph*, 22-65 (La. App. 5 Cir. 12/21/22), 355 So.3d 144, 150; *Alombro*, 845 So.2d at 1169; *see also Mother of Eden, LLC v. Thomas*, 11-1303 (La. App. 3 Cir. 3/7/12), 86 So.3d 760, 765-66 (finding that the trial court erred by awarding sanctions and attorney's fees without first holding a hearing and allowing the party the opportunity to present arguments regarding the issue).

Our review of the record indicates that Ms. Baker complained in her opposition to Mr. Flake's motion for sanctions that the trial court should strike his motion and award sanctions against him. However, she did not move to set a hearing on a motion for sanctions under La. C.C.P. art. 863 against Mr. Flake.

Further, the trial court did not indicate that it was considering a motion for sanctions against Mr. Flake during oral argument and did not grant him the opportunity to present argument or evidence prior to awarding the sanctions.

Thus, we vacate the portion of the trial court's March 10, 2023 judgment awarding $2,500 of attorney's fees and costs in favor of Ms. Baker and Mr. Justin E. Molaison against Mr. Flake.

### *Evidence Excluded By Trial Court*

Mr. Flake finally complains that the trial court refused to admit the following additional items into evidence at the March 2, 2023 hearing: 1) his responses to Ms. Baker's requests for admission; 2) his affidavit concerning his qualifications as succession representative; and 3) letters between counsel. Mr. Flake fails to explain how these documents are relevant or necessary to any of the issues he raises on appeal. Accordingly, we find that this assignment of error is without merit.

### CONCLUSION

Considering the forgoing, we reverse and modify the disposition of the decedent's Gator Trax mud boat in the March 1, 2023 judgment of possession to provide Mr. Flake sole possession of this property. We also reverse the disposition placing the legatees into possession of the decedent's banking and investment accounts that were liquidated during the administration of the succession and remand for further proceedings to determine the remaining funds to be distributed to the heirs. We affirm the March 1, 2023 judgment of possession in all other respects.

Regarding the March 10, 2023 judgment, we affirm the denial of Mr. Flake's motion for sanctions against Ms. Baker under La. C.C.P. art. 863, but reverse the award of attorney's fees against Mr. Flake.

**REVERSED IN PART AND REMANDED;
MODIFIED IN PART; AFFIRMED IN PART**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## <u>NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY</u>

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **APRIL 3, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 23-CA-310

### <u>E-NOTIFIED</u>
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE NANCY A. MILLER (DISTRICT JUDGE)
ALAN MARK FLAKE, SR. (APPELLANT)      STEPHEN C. JUAN (APPELLANT)      HAROLD E. MOLAISON (APPELLEE)
JUSTIN E. MOLAISON (APPELLEE)      JACK A. TITTLE, JR. (APPELLEE)

### <u>MAILED</u>
DARRYL T. LANDWEHR (APPELLANT)
ATTORNEY AT LAW
650 POYDRAS STREET
SUITE 2519
NEW ORLEANS, LA 70130